# OCTOBER TERM, 1886.*

THOMAS H. MCGRAW v. GEORGE E. DOLE.

*Equity—Bill for an accounting.*[1]

On the facts in this case, as stated in the opinion, the Court *held:*—

1. That the *effect* in *law* of the contract relations between the parties, and what they did in relation to the *lumbering outfit,* was to vest the *legal* title in defendant, he agreeing that it should remain the property of McGraw & Co. until paid for, as their *security* for the advances made and to be made on account of the lumbering job.

2. That this agreement for security contained no provision authorizing McGraw & Co. to take possession of the property, or authority to sell the same, *without* defendant's consent, and could only be enforced in equity.

3. That it was the duty of McGraw & Co. to make the necessary advances to defendant to enable him to carry out his agreement, and that their refusal to do so gave rise to no equities or rights in their favor.

4. That by taking possession of the property and ousting defendant from the job, which they let to other parties, charging defendant with the contract price, and also all advances and outlays in the lumbering operations, and crediting him with the amount he was to receive for performing said contract, no contract relations were created.

   That if the defendant was to be charged with such advances, he had the right to perform the job in his own way, and to any profits accruing to [such] contractors in its performance; and that complainant cannot, by wrongfully terminating the contract with defendant, and appropriating his property, *create* a right to compel an accounting in equity with reference to the operations had after taking such possession, or as to the avails of property *wrongfully* converted.

5. The decree below was reversed, and record remanded, with leave

---

* Continued from Vol. 62.
[1]For full digest of points decided, see *Table of Cases Reported.*
    63 MICH.—1.

to defendant to prosecute the trover suit brought against complainant to *final* judgment, after which a further accounting may be had, in which the amount found due defendant as damages in such trover suit, if any, may be allowed as a *credit* in his favor, and subject to such further directions and decree as the circuit court in chancery may see fit to make.

Appeal from Bay.   (Green, J.)   Argued July 13, 1886. Decided October 7, 1886.

Bill filed for an accounting.   Defendant appeals.   Decree reversed.   The facts are stated in the opinion.

*Hatch & Cooley (Isaac Marston,* of counsel), for complainant:

Where a firm, engaged in lumbering business jointly with appellant, holds title to land in trust for its own and appellant's benefit, and there has been no accounting, equity has jurisdiction of a bill brought for an accounting and to wind up the joint transactions: *Cochrane v. Adams,* 50 Mich. 19; *Clarke v. Pierce,* 52 Id. 157.

Such a bill may embrace and settle the entire controversy where a suit at law would settle but a part: *Woods v. Monroe,* 17 Mich. 238.; *Eaton v. Trowbridge,* 38 Id. 456.

A purchaser at an irregular mortgage foreclosure sale is entitled to the rights of a mortgagee in possession: *Gilbert v. Cooley,* Walker, Ch. 494; *Lyle v. Palmer,* 42 Mich. 317.

If an entire instrument, either standing alone or in the light of surrounding circumstances, must be considered a mortgage, the law will apply to it the rules applicable to mortgages: *Cooper v. Brock,* 41 Mich. 490; *Lamson v. Moffat,* 61 Wis. 153.

Where the instrument directs the method of sale, and this is not observed, the mortgagee will be held for the value of the property at the time of sale: *Davis v. Rider,* 5 Mich. 435; *Brong v. Brown,* 42 Id. 120; *Botsford v. Murphy,* 47 Id. 537.

In an action of trover the measure of damage will be the value of the property less the debt, with any special damages proved: *Brink v. Freoff,* 40 Mich. 614; *S. C.* 44 Id. 69.

Where the instrument does not prescribe the method of sale, and there is no statutory provision, the property may

be sold without judicial proceedings, upon reasonable notice to the mortgagor: *Patchin v. Pierce*, 12 Wend. 63; *Hart v. Ten Eyck*, 2 Johns. Ch. 99; *Davenport v. McChesney*, 86 N. Y. 242; *Parker v. Brancker*, 22 Pick. 40; *Doane v. Russell*, 3 Gray, 382; *Freeman v. Freeman*, 17 N. J. Eq. 44; *Cline v. Libby*, 46 Wis. 123; *Olcott v. Tioga R. R. Co.*, 27 N. Y. 566; *Long v. Moore*, 56 Mich. 23.

An essential difference between a pledge and a mortgage is that goods pledged must be given into the possession of the pledgee: 1 Pars. Cont. 594-5.

In pledges, upon failure to pay, the pledgee could sell, but he must before sale give reasonable notice to pledgor: 1 Pars. Cont. 602.

Under the circumstances of this case, McGraw & Co. had a right to take the property and sell it for the purpose of realizing the amount due them: *Johnston v. Whittemore*, 27 Mich. 467; *Smith v. Lozo*, 42 Id. 11.

*Tarsney v. Weadock*, for defendant:

The conveyance to McGraw & Co. is not a mortgage, for it does not assume to transmit property by way of lien from Dole, but resembles somewhat the instrument construed by the Court in *Dalton v. Laudahn*, 27 Mich. 529.

CHAMPLIN, J.   There appears to be no dispute between the parties to this suit as to the right of complainant to file his bill of complaint to obtain an accounting and winding up of the matters growing out of the trust relationship between the parties.

The defendant contends that such accounting ought not to include his claim against the plaintiff, arising out of the acts of complainant in taking possession of a large amount of personal property, breaking up his logging contract, and destroying his business, for which, previous to the filing of the bill, he had brought an action of trover against the complainant.

To decide this question it will be necessary to enter at considerable length into the facts out of which the controversy arises.

In the year 1879 the complainant and one Watrous

were copartners, doing an extensive lumbering business at Bay City, Michigan, under the firm name of McGraw & Co. Defendant was also à lumberman, and in that year he and McGraw & Co. entered into a contract for the purchase of certain pine lands, and agreed to operate thereon, the particulars whereof are not necessary to be stated, other than that there resulted to the parties a profit in the adventure, of which defendant was entitled, as his share, to $2,207.53.

On May 8, 1880, another contract was entered into between the same parties, a copy of which is given below, viz:

"George E. Dole, of East Saginaw, Mich., party of the first part, and T. H. McGraw & Co., of Portsmouth, Mich., party of the second part, agree to and with each other as follows, this eighth day of May, 1880:

" Said Dole agrees, for a half interest in the hereinafter described operation, to give his undivided time and attention, free of cost, to said McGraw & Co., in the lumbering of the following described lands, viz.: The S. $\frac{1}{2}$ of sec. 22, N. $\frac{1}{2}$ of sec. 27, N. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ of sec. 28, N. E. $\frac{1}{4}$ of N. E. $\frac{1}{4}$ of sec. 29, all in T. 20 N., R. 5 E.; said Dole to furnish for said operation whatever funds he may receive from the joint-account operation under contract of October 14, 1879, between the parties to this contract, after deducting his necessary expenses; and McGraw &. Co. to furnish the remaining funds necessary to the successful operation of said lumbering. The entire cost of lands, lumbering, etc., together with an interest account of 7 per cent. per annum, to be charged to joint account. The title to said lands to be in McGraw & Co. until such time as said Dole shall pay said McGraw & Co. for his one-half interest in the joint account, when they agree to give said Dole a deed for one-half of said lands; all of said lands to be lumbered during the coming winter, if possible; said McGraw & Co. to have the opportunity to buy said Dole's one-half interest in said logs, and to have the preference over any other party, at the same price; said McGraw & Co. to retain the ownership of said Dole's interest until such time as said Dole shall pay said McGraw & Co. for his proportion of the joint account; said Dole to attend to the

letting of the contract for lumbering of said lands, consulting said McGraw & Co. at all times as to the conduct of the business; neither party to sign any papers as partners, or accept any draft or give any note.

"GEORGE E. DOLE.

"T. H. McGRAW & Co.,

"Per Birdsall."

The consideration paid by McGraw & Co. for these lands was $25,500.

During the summer or early fall of 1880 a verbal arrangement was agreed upon, by which it was agreed that defendant himself should perform the job of lumbering from these lands, and in pursuance thereof he commenced preparations to do so. He purchased of one Luther Gordon the iron rails then on a logging road belonging to Gordon, and also eleven logging cars. The money to make this purchase was advanced by McGraw & Co., and a bill of sale as security was taken in McGraw & Co.'s name. The length of iron rail purchased of Gordon was about 3.8 miles, and was moved by defendant, and relaid upon a road-bed constructed by him from Rifle river to the main body of land mentioned in the contract. The verbal agreement above alluded to was afterwards, and on the thirteenth day of September, 1880, reduced to writing, and reads as follows:

" George Dole, of East Saginaw, Mich., and T. H. McGraw & Co., of Portsmouth, Mich., each for a sufficient consideration, agree to and with each other, this thirteenth day of September, 1880, as follows:

" Said Dole to cut, skid, and haul during the present lumbering season of 1880 and 1881, and deliver in the Rifle river boom as early as practicable in the spring of 1881, all the pine timber on the hereinafter described lands, the title to which is vested in T. H. McGraw & Co. for the purpose of security for the purchase price of said lands, but one-half of which, when paid for by said Dole, shall belong to said Dole, and one-half of the logs from which shall also belong to said Dole when he shall have paid his proportion of purchase price of said lands, and his proportion of the cost of lumbering said lands, with

interest at the rate of 7 per cent. per annum on all sums paid by said McGraw & Co. on the purchase price and lumbering of said lands; the joint account to pay said Dole for the cutting, skidding, hauling, and delivery of said logs in said Rifle river boom, the sum of $3.25 per thousand feet; said logs to be cut 12 feet 2 inches, 14 feet 2 inches, and 16 feet 2 inches in length, or otherwise as directed: to be long butted when necessary; to be square butted, and to be cut as economically as possible as regards rots, crooks, shakes, etc.; and to be scaled by Scribner's rule, straight and sound, by some man to be agreed upon between the parties.

"Should McGraw & Co. purchase said Dole's interest in said logs,—and it is understood and agreed that said McGraw & Co. are to have the privilege of purchasing said logs at the market price for such logs, either when all the logs are banked, or when enough of them have been delivered in the mill boom to show a fair average,—said McGraw & Co. may, if they choose, have said logs rescaled by some man to be agreed upon by the parties, the woods or bank scale to be a basis for the settlement of the lumbering of said logs, and the second or water scale to be a basis for the final settlement for the purchase of the logs.

"Said McGraw & Co. agree to pay and said Dole to receive as payment in full for the lumbering of said lands, in the manner and at the time hereinbefore mentioned, the sum of $3.25 per thousand feet, to be paid as follows: $1.50 per thousand feet as fast as each 500,000 feet is skidded; $1.50 per thousand feet as fast as each 500,000 feet is banked; and the balance when all the logs are delivered in said Rifle river boom.

"It is further agreed and understood that, as security for money advanced and to be advanced by said McGraw & Co. to said Dole on account of said lumbering job, all horses, harness, T rail, railroad cars, or lumbering outfit, of whatever kind, purchased or to be purchased for said operation, including said railroad complete, shall be and remain the property of said McGraw & Co. until paid for by said Dole.

"It is further agreed and understood that the amount advanced said Dole for the purchase of said outfit shall be deducted from said above-named advances on skids and on bank as fast as said Dole can possibly spare any part of said advances for the carrying on of said operation.

"It is also agreed and understood that said Dole shall employ a sufficient force of men and teams to complete said operation during the coming winter and spring.

"The lands heretofore mentioned are known and described as follows, to wit: The S. ½ of sec. 22, the N. ½ of sec. 27, the N. W. ¼ of the N. W. ¼ of sec. 28, and the N. E. ¼ of the N. E. ¼ of sec. 29, all in T. 20 N., of R. 5 E., State of Michigan.

"GEORGE E. DOLE.
"T. H. McGRAW & Co.,
"By W. C. McClure."

It will be seen that the contract of May 8 contemplated that the lumbering operations were to be carried on upon joint account, McGraw & Co. agreeing to furnish the funds necessary to the successful operation of lumbering.

The effect of the second contract was that the parties operating these lands upon joint account let the job of lumbering them to defendant. The contract contemplates that McGraw & Co. shall furnish the necessary funds to enable defendant to successfully prosecute the undertaking, and provides that defendant shall pay interest thereon, and it also provides that,—

"As security for money advanced and to be advanced by said McGraw & Co. to said Dole on account of said lumbering job, all horses, harness, T rail, railroad cars, or lumbering outfit, of whatever kind, purchased or to be purchased for said operation, including said railroad complete, shall be and remain the property of said McGraw & Co. until paid for by said Dole."

The amounts paid by McGraw & Co. for the railroad and cars bought of Gordon and other lumbering outfit were at once charged to Dole's individual account upon the books of McGraw & Co., Dole in each instance receiving the actual possession thereof. The effect in law of the contract relations between the parties, and what they did in relation to the lumbering outfit, was to vest the legal title thereto in Dole, he agreeing that the property should be and remain the property of McGraw & Co. until paid for, as their security for the advances made and to be made on account of the lumbering job.

This agreement for security was one that gave McGraw & Co. no right to take possession of the property without consent of Dole in order to enforce their security by a sale. It was such an agreement as could only be enforced in equity as an equitable lien arising under the agreement. It contained no provision authorizing McGraw & Co. to take possession, and no power or authority to sell the property is expressed in the agreement.

Dole proceeded with his lumbering operations. About 6 miles of railroad track was graded, and about 5 miles of iron track laid. He cut and put into Rifle river during the winter of 1880 and 1881, upon sleds, about 2,000,000 feet of pine logs from land not readily accessible to the railroad. He bought new iron, new cars, and two additional locomotive engines. He banked in all about 3,625,091 feet, cut and skidded about 2,250,000 feet, and cut but not skidded about 227,130 feet, up to May 24, 1881. All these operations required a large amount of money, which was advanced by McGraw & Co. to Dole, and charged to his individual account, amounting on the twenty-fourth of May, 1881, to $38,043.04.

In January, 1881, Mr. McGraw sold to the Export Lumber Company, Limited, 5,000,000 feet of the logs being put in by Dole, to be delivered at Tawas and at Bay City, for $8.50 per thousand feet. The Export Company was. also given the option to purchase the balance (the total amount being estimated at 10,000,000 or 12,000,000 feet) if arrangements could be made for sawing them.

Complainant claims that this sale was made with the consent of defendant; and he charges in his bill that, relying upon the contract entered into by Dole to deliver the logs in the season of 1880 and 1881, he had entered into contracts for the sale and delivery of logs, and that Dole, in the month of May, 1881,—

"Expressed his inability to go on and perform the con-

tract unless McGraw & Co. would advance to him further moneys, which they were unwilling and unable to do, and that it became, therefore, necessary for McGraw & Co. to take possession of the camps, supplies, teams, etc., of the said Dole, and put in the balance of the timber and logs, in order to comply with the contract of sale above mentioned."

I find no support to this claim in the testimony.

The contract with the Export Lumber Company is in writing, and no time of delivery is mentioned therein, which would leave the logs to be delivered in a reasonable time.    Mr. Dole in his testimony states that some time in February, 1881, Mr. McGraw came to his camp, and told him that he had an opportunity to sell the logs provided they could all be delivered at Bay City on or before the first of July following, and asked him if he could deliver them then; and he told him he could not do it with the road and cars as they then were; that McGraw then asked him if he would consent to the sale of them, and agree to deliver them there by the first of July, if he would advance moneys to buy more cars, an engine, and a mile more in length of iron; that he (Dole) told him he would do the best he could to put them through, but it was very doubtful if it could be done; that he agreed to furnish money for an engine, or buy one, also some new logging cars and a mile of iron.

The engine, cars, and iron were purchased, and, in order to accommodate the track to the new rolling stock, which was of the standard gauge, a rail was taken up and relaid the whole extent of the road.  This was completed the latter part of May, 1881, and defendant had commenced to haul with his new engine and cars.  At this time he had cut and delivered, and had cut and skidded in readiness for transportation by rail, the quantities above stated. It will be seen that the greater part of the outlay preparatory to the performance of the contract had at this time been incurred.  The cost of material and constructing the

road had required an outlay of $19,700, or thereabouts, which was more than one-half of the total amount advanced by McGraw & Co. thus far to Dole under the contract.

It appears that Dole at this time went to Bay City upon business connected with his lumbering operations, and there saw a Mr. Birdsall, the agent of McGraw & Co., and requested him to pay and take up a note of about $900 which Dole had given for supplies. Birdsall inquired of Dole respecting his outside indebtedness incurred in the prosecution of the job, and Dole gave him the items, amounting to about $6,000. Birdsall, acting for McGraw & Co., then refused to take up or provide for the note mentioned above, and asked Dole if he could carry out the contract without any further advances from McGraw & Co., and he stated that he could not.

McGraw & Co., in view of the amount already advanced, considered Dole's inability to perform the contract without further advances from McGraw & Co. as sufficient cause to authorize them to take forcible possession of the property belonging to Dole, and prevent him from the further performance and fulfillment thereof. I think that the seizure by McGraw & Co. of defendant's property was entirely unauthorized and unjustifiable. There was nothing in the existing posture of affairs, the manner of prosecuting the job, or the advances previously made, which authorized McGraw & Co. to refuse to go on according to the agreement, and furnish all advances reasonably necessary to a successful prosecution of the job.

There was no complaint that Dole had been extravagant or reckless in the use of money advanced, or that he was an unskillful or incompetent person to manage the business, or that he had not performed as rapidly as he could do with the means at his command.

It was the duty of McGraw & Co. to make the necessary advances, and their refusing to do so gave rise to no rights

or equities in their favor. There is no evidence that the logs contracted to be delivered to the Export Lumber Company could not have been delivered by Dole by the first of July.

McGraw & Co., after taking possession of the property, went on in their own way to put in the pine. They let portions of it to be performed by contract, charging Dole with the contract price, and also with all advances and outlays in the lumbering operation, and crediting him the amount stipulated in the contract if he had performed the work himself.

It is apparent that no such enforced contract relations can be created. If Dole was to be charged with the advances necessary to complete the job, he had the right to perform it in his own way and under his own management, and he had the right to any profit accruing to contractors in the performance of the work. The complainant cannot, by wrongfully terminating the contract and tortiously seizing and appropriating defendant's property, create a right to compel an accounting in equity with reference to the operations after possession taken, or as to the avails of property wrongfully converted.

But the defendant sets up the foregoing facts in his answer, and claims the same benefit that he would be entitled to had he filed a cross-bill, and asks for affirmative relief. And the parties have filed a stipulation entitled in this cause, and in the suit at law brought by Dole against McGraw, as follows:

"That the testimony in the chancery case shall be taken in full; that when so taken the cases shall be submitted upon said testimony, and argued together before the circuit court; that if, in the opinion of the said court, the said cause in chancery covers all the matters in dispute in said causes, then that a decree shall be rendered in said chancery cause upon the evidence so taken; but if, in the opinion of the court, matters embraced in the case at law are not included and covered by the said cause in chancery, then

that the said court, upon the evidence so submitted in the chancery cause, shall render such decree as may be proper in said chancery cause, and may in said suit at law render a judgment as though the said case at law was tried before the said court, and shall also, at the same time, make a finding of the facts and conclusions of law in said suit at law the same as though it were tried before the said court; each party reserving the usual rights of appeal, writ of error, etc., in each of said causes."

We do not take the same view of the relative rights of these parties flowing out of the contracts entered into between them that was taken by the learned circuit judge who rendered the decree in the court below. We cannot, therefore, affirm the decree rendered by him. We think there are matters embraced in the trover suit, which, as the case stands, cannot be finally determined by us upon this record, regarding it as a bill and cross-bill. We are of opinion that the question of damages and the extent of McGraw's liability to Dole in the trover suit is eminently proper to be determined by the law court. In the record before us there is not sufficient testimony bearing upon those questions to enable us to properly adjust the rights of the parties.

The decree must be reversed, and the record remanded, with leave to prosecute the suit in trover to a final determination; and, after final judgment, a further accounting may be had, in which the amount found due to Dole as damages in the trover suit, if any, may be allowed as a credit in his favor, and subject to such further directions and decree as the circuit court in chancery may see fit to make; subject, also, to the right of appeal to either party. The defendant will recover his costs upon this appeal.

The other Justices concurred.